Mr. Justice Quin
delivered the opinion of the court :
It is unnecessary to enter into any lengthy detail of facts *222 in reference to this prolonged and extraordinary controversy. If it shall be continued in the future as long as it has been in the past, it is quite obvious that the result will be that out of a property of the value of nearly half a million of dollars, neither the plaintiff nor defendant will derive any benefit.
The question before us arises on a motion to discharge the receiver appointed in this case in May, 1875.
That motion would ordinarily be heard before the judge holding the special term, or in his discretion might be certified to and heard at the general term in the first instance, which was done in this case; and this court is now to make the same order as, we think, on the whole, ought to be made by the justice holding the special term.
The order appointing a receiver, which was prayed for in the bill of complaint, seems to have been made principally in pursuance of the answer of the defendant Grant to the rule to show cause why a receiver should not be appointed. In that answer the defendant Grant says, in view of these facts, the defendant desires that ten of the houses, (giving their numbers,) be completed under authority of this court, and be rented for a period not exceeding three years, and that the rents be paid into the court; and the defendant prays that K. J. Meigs, clerk of the Supreme Court of the District, or some disinterested person', be appointed a receiver, and be directed to have the unfinished buildings numbered from 1 to 14, with the exception of number 13, completed under the superintendence of the defendant Grant, and apply the rents, as far as may be necessary, to the payment of the expense for completing these buildings, and if necessary, to make a temporary loan for the purposes aforesaid, the same to be reimbursed from the rents of said buildings; that all the rents not expended in the completion of said buildings may be paid into court, to abide the order and judgment of the court. Upon Grant’s answer to the rule to show cause, an order was made by the court at special term appointing Phillips and ‘Wilson receivers, wholly ignoring the conditions upon which Grant assented to the appointment of a receiver. This pro *223 ceeding for the appointment of a receiver was had before Grant filed his answer to the bill of complaint. Upon filing his answer, a motion is made to the court to discharge the receivers, and that is this question now before us.
When a receiver is appointed before the coming in of the answer of the defendant after answer is interposed, the defendant is allowed to move to discharge the receiver; and if the bill and answer, taken together, show that a receiver ought not to have been appointed, the receiver should be discharged.
It will be observed that the mortgage or deed of trust, as it is called, did not mortgage or create any lien upon the rents and profits of this property; and while it is averred in the bill that the property mortgaged is an inadequate security for the amount of money loaned to the mortgagor, and that he is insolvent, that affords no grounds whatever for seizing upon the rents and profits before foreclosure or sale of the mortgaged premises. Indeed, the grocer or merchant who supplied the necessaries of life for Grant and family has a much higher equity on the rents and profits than the mortgagee. The latter loaned Grant money and took security for the repayment of it, but the former sold him goods on his personal credit.
What justice or equity is there in allowing a mortgagee to' claim any rights in reference to something not mortgaged to him, over and above the rights of any other contract creditor ?
No well adjudicated case can be found, I think, that allows the appointment of a receiver of rents and profits, when these rents and profits were not mortgaged, except, perhaps, in the State of New York, in which these decisions depend mainty upon the statute laws of that State; and these decisions may be laid out of the' question so far as this case is concerned.
The question is so much better stated in the brief of the defendant’s counsel, that I take the liberty to quote from it. In reference to a mortgaged security he says:
“ What security does a man take ? He takes such as he agrees to take. Has the court any right to give him any *224 more than he agreed to take? I mortgage my house, and my creditor chooses to take that mortgage: am I to give him any more than I agreed to give him? He has a right, under the law, to take possession, and then he gets all; but until he does, it is mine.
“ I mortgage the rent of my honse without the house: would he take anythiug more? He has just the security he agreed to take. If it was more or less, it was the contract between the parties, and the court has no right to make a new contract for the parties, and never does make a contract for them.”
And the counsel might further have added, that among parties competent to contract, in the absence of any allegations of fraud, imposition, or mistake, a court of equity has no more power to set aside, modify, or alter the contract of the parties than has a court of law. To this extent has the length of the chancellor’s foot been shortened in these modern times. But waiving the question as to the power of the court of equity to appoint a receiver to take the rents and profits of mortgaged premises, when such rents and profits are not mortgaged, and supposing such power was vested in a court of equity, that power, exercised in this case, has proved a signal failure.
Property to the value of half a million dollars, nearly, has been in the hands of a receiver appointed by this court for nearly four years, and is evidently going to destruction, and without yielding a revenue sufficient to pay the ordinary taxes. For this condition of things this court is mainly responsible. I impute no fault to Mr. Wilson, the receiver. He has done as well, probably, as would any other man uuder like circumstances.
The consequences which have ensued are but the inevitable results of such a proceeding. The worst mode of administering law or equity is by granting injunctions or appointing receivers. The thing enjoined generally dies of inanition before the close of the litigation, and the thing to be received *225 seldom pays the amount of expense incurred in receiving it. We think the receiver in this case should be discharged.
The question of the gravest importance in this case has been argued at great length, and that is, whether upon the dismissal of the creditor’s bill filed by Carter, in which the plaintiff in this suit was made defendant, and appeared, is conclusive as to his further litigation of the claim set up in the present bill.
Upon that question we express no opinion, not deeming it necessary to the proper solution of the question now before the court.
Humphreys, J., concurred.